IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

HELEN CALICO                                                                                    PLAINTIFF

          v.                              CIVIL NO. 10-5011

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                  DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Helen Calico, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current application for DIB on August 23, 2007, alleging an inability to work since April 1, 2005, due to severe back pain, carpal tunnel syndrome, headaches, hypertension and gastroesophageal reflux disease (GERD). (Tr. 43, 83, 100). For DIB purposes, Plaintiff maintained insured status through December 31, 2008. (Tr. 40). An administrative hearing was held on February 24, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 15-34).

By written decision dated June 1, 2009, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 42). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, status post laminectomy; carpal tunnel syndrome; and obesity. (Tr. 42). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 42). The ALJ found that through her date last insured Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except that she can frequently handle, finger and grasp; can only occasionally climb ladders, ropes and scaffolds, stoop, crouch and crawl; and must be given the opportunity to change positions from sitting to standing at the end o[f] each task or hourly.

(Tr. 43). With the help of a vocational expert, the ALJ determined Plaintiff could perform her past relevant work as a card assembler and a telemarketer. (Tr. 31, 45).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 30, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

**II.     Evidence Presented:**

At an administrative hearing held before the ALJ on February 24, 2009, Plaintiff, who was forty-two years of age, testified that she obtained a tenth grade education. (Tr. 19). Plaintiff testified she was laid off from her job on April 1, 2005. (Tr. 19). The record reflects Plaintiff's past relevant work consists of work as a certified nurse assistant, a jewelry carder and a telemarketer. (Tr. 27-28, 104).

The medical records prior to the relevant time period reveal Plaintiff underwent a decompressive lumbar laminectomy and interbody fusion at L5-S1. (Tr. 158-160).

The pertinent medical evidence during the relevant time period of April 1, 2005, through December 31, 2008, reflects the following. On May 12, 2006, Plaintiff was seen at the Boston Mountain Rural Health Center (Boston Mountain). (Tr. 146). Plaintiff complained of a one week history of nasal congestion, drainage and a cough. After examining Plaintiff, Dr. Kevin Richter diagnosed Plaintiff with acute sinusitis and prescribed Amoxicillin.

On October 18, 2007, Plaintiff underwent a general physical examination performed by Dr. Stanley Reyenga. (Tr. 161-167). Plaintiff complained of chronic back pain that had been "getting worse" over the past two years. Plaintiff complained of swelling in her lower legs with prolonged sitting or standing and radiating pain into her left hip and leg. Plaintiff also reported some right wrist pain and left shoulder pain. Dr. Reyenga noted Plaintiff's medications consisted of over-the-counter Ibuprofen. With the exception of some limitation with flexion in the lumbar spine, Dr. Reyenga noted Plaintiff had normal range of motion in her spine and extremities. Plaintiff's gait and coordination were within normal limits and no muscle weakness or atrophy was noted. Dr. Reyenga noted that with the exception of ninety-five percent grip strength, Plaintiff had normal limb function. Dr. Reyenga diagnosed Plaintiff with chronic low back pain secondary to degenerative disc disease status post lumbar fusion and obesity.

On October 18, 2007, Dr. Bill F. Payne, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could push or pull unlimited, other than as

shown for lift and/or carry. Dr. Payne opined Plaintiff could occasionally kneel, crouch and crawl; and that manipulative, visual, communicative or environmental limitations were not evident. (Tr. 170-177)**.** Dr. Payne made the following additional comments:

> 41 y/o alleges back problems. Hx lumbar fusion. No recent tx. Current GPCE reveals mild ROM of L-spine. Normal gait and no neuro deficits. X-ray shows evidence of prior fusion.
> MER supports light RFC.

(Tr. 177). After reviewing all the evidence, Dr. Steve Owens affirmed Dr. Payne's findings on January 6, 2008. (Tr.181).

On November 20, 2007, Plaintiff was seen at Boston Mountain for back pain. (Tr. 179). Dr. Martha Morgan noted Plaintiff had been taking Ibuprofen for her pain and that Plaintiff reported this was no longer working. Plaintiff's blood pressure was also noted as elevated and Dr. Morgan noted at one time Plaintiff had been on blood pressure medication. Plaintiff also complained of pain in her hands and numbness in the tips of her fingers. Plaintiff reported she had been diagnosed with carpal tunnel syndrome in the past. Plaintiff indicated that she did not sleep well due to pain. Upon examination, Dr. Morgan noted Plaintiff's hands revealed no numbness and no numbness was elicited on capping over the wrists or on stretching the nerve area. Dr. Morgan noted Plaintiff had difficulty getting onto the table. Plaintiff had normal various strengths. Dr. Morgan noted Plaintiff's flexes were normal but there was pain on flexion and extension of the back. Dr. Morgan diagnosed Plaintiff with chronic back pain from previous injury and surgery with fusion of the L5-S1 area; probable carpal tunnel syndrome, both hands; and elevated blood pressure. Plaintiff was prescribed medication and instructed to use splints on her arms at night. (Tr. 180).

On December 20, 2007, Plaintiff returned for a follow up for her hypertension and back pain. Plaintiff reported the Meloxicam helped with her back pain but also made her nauseated. Plaintiff reported no edema since starting the Diazide for her hypertension. Plaintiff reported she had used the Vicodin sparingly as directed. Dr. Morgan discontinued Plaintiff's Meloxicam. Plaintiff was to return in three months.

On October 3, 2008, Plaintiff sought treatment at Boston Mountain for back pain. (Tr. 185). Plaintiff reported she had been carrying her daughter.[1] Plaintiff also reported feeling clammy and nauseous. Plaintiff had been taking hydrocodone for the mild spasm in her back. The examiner noted Plaintiff had tried cortisone shots and that Plaintiff reported "they just don't help." Plaintiff was instructed to quit lifting and given a prescription for Vicodin and Flexeril.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other

---

[1] At the hearing Plaintiff clarified this note by testifying that she was watching her granddaughter two to three days a week. (Tr. 30).

words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

AO72A
(Rev. 8/82)

## IV.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled prior to December 31, 2008, her date last insured. Defendant argues substantial evidence supports the ALJ's determination.

### A.   Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2008. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of April 1, 2005, her alleged onset date of disability, through December 31, 2008, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

### B.   Subjective Complaints and Credibility Analysis:

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v.

Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff's contends that her severe back pain, carpal tunnel syndrome, headaches, hypertension and GERD were disabling prior to the expiration of her insured status, the evidence of record does not support this conclusion.

In making this determination, the ALJ pointed out that while Plaintiff alleged headaches and GERD at the hearing, there was no medical evidence to support Plaintiff's complaints or treatment of these impairments during the relevant time period. Based on the record as a whole, we find substantial evidence to support the ALJ's determination that Plaintiff's alleged headaches and GERD were not severe impairments. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000); see also 20 C.F.R. § 416.908 (impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques).

As for Plaintiff's alleged hypertension, the ALJ noted that the medical evidence shows this impairment was controlled with medication. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009), quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

With regard to Plaintiff's chronic back pain, the ALJ noted Plaintiff underwent a spinal fusion in 2000, and that Plaintiff was able to work until April 1, 2005, when she was laid off due to company downsizing. The ALJ pointed out that there is no evidence that Plaintiff sought treatment for her back pain during the relevant time period until October of 2007, when Plaintiff underwent a consultative general physical examination. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent with allegations of pain). At that time, Plaintiff reported she took only over-the-counter medication for her pain. See Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) ( lack of strong pain medication was inconsistent with disabling pain). The record reflects that Plaintiff sought treatment for back pain and received prescriptions three times during the relevant time period in November 2007, December 2007 and October 2008. It is noteworthy that in October 2008, Plaintiff reported pain with lifting her grandchild and later testified at the administrative hearing that in October of 2008 she had been watching her grandchild two to three days a week. Thus, while Plaintiff may indeed experience some degree of pain due to her back impairments, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff's back impairment was not disabling prior to December 31, 2008. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With regard to Plaintiff's alleged carpal tunnel syndrome, the medical evidence reveals Plaintiff was diagnosed with probable carpal tunnel syndrome in November of 2007. At that time, Dr. Morgan noted Plaintiff's hands revealed no numbness and no numbness was elicited on capping over the wrists or on stretching the nerve area. Plaintiff did not specifically complain

about problems with her hands to a treating physician again. The ALJ also pointed out that Plaintiff had failed to use splints at night as instructed by Dr. Morgan in November of 2007. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff did not have disabling carpal tunnel syndrome.

With regard to Plaintiff's obesity, while Plaintiff was diagnosed with obesity by Dr. Reyenga in October of 2007, the medical evidence fails to show that any treating or examining physician limited Plaintiff's activities due to her obesity. Further, Plaintiff did not testify at the hearing that her weight caused any more limitations. See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir.2003) (claim of obesity impairment waived on appeal where claimant did not raise any limitation from the impairment in his application or during hearing).

Although Plaintiff testified that she did not seek consistent treatment due to the lack of finances, Plaintiff has put forth no evidence to show that she has sought low-cost medical treatment or been denied treatment due to her lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. In a Function Report dated September 5, 2007, Plaintiff indicated she lived in a house with her family and that from the time she woke up until she went to bed, Plaintiff reported she cleaned house, did laundry, cooked and care for her animals. (Tr. 114-121). Plaintiff reported she could take care of her personal hygiene; that she was able to drive a car; and that she was able to shop in stores on her own. Plaintiff reported she could handle money. Plaintiff reported

she watched television daily and that she read and sewed once in a while. As previously mentioned, it is also noteworthy that Plaintiff testified at the February 24, 2009 administrative hearing that she had been watching her grandchild two to three days a week in October of 2008. (Tr. 30). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support Plaintiff's contention of total disability prior to December 31, 2008.

With regard to Plaintiff's argument that the ALJ did not allow her daughter to testify at the administrative hearing, there is no evidence to support such argument. The record shows the ALJ acknowledged that Plaintiff may call her daughter to testify but there is no indication that Plaintiff's counsel attempted to and was denied the opportunity to call Plaintiff's daughter to testify as a witness. There is also no indication that Plaintiff's counsel argued to the Appeals Council that Plaintiff was not allowed to call witnesses at her administrative hearing.

Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C. RFC Assessment:

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when she determined Plaintiff could perform light work with limitations prior to her date last insured. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find

AO72A
(Rev. 8/82)

substantial evidence to support the ALJ's RFC determination.

### D. Past Relevant Work:

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Therefore, even though a claimant cannot perform the actual demands of her particular past job, if she can carry out her job as it is generally performed in the national economy, she is not disabled under the regulations. Evans v. Shalala, 21 F.3d 832, 834 (8th Cir. 1994). We note in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, testified that the hypothetical individual would be able to perform Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The

testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the ALJ properly concluded Plaintiff could perform her past relevant work as a card assembler and a telemarketer.

## V.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 3rd day of March 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)